[Civ. No. 911.    Second Appellate District.    April 18, 1911.]

RAY HAWLEY, Respondent, v. THE LOS ANGELES CREAMERY COMPANY, a Corporation, Appellant, and THE BELLE VERNON FARMS COMPANY, a Corporation, Codefendant.

MASTER AND SERVANT—SAFETY OF APPLIANCES—DUTY OF MASTER—CONTINUANCE OF SERVANT IN USE WITH KNOWLEDGE OF UNSAFETY—CONTRIBUTORY NEGLIGENCE.—Notwithstanding the rule that an employer is bound to furnish his employee with reasonably safe appliances to perform the work for which they are designed, and to keep them in repair, yet it is the general law of this state, embodied in section 1970 of the Civil Code, that a servant having knowledge of the unsafe character of the appliances by him used shall be barred of recovery, if thereafter with such knowledge and understanding, comprehending and appreciating the danger incident thereto, he consents to or continues in the use thereof.

ID.—PROMISE TO REPAIR DEFECTIVE LINES FOR DRIVER OF MILK WAGON—EFFECT — USE FOR REASONABLE TIME — RISK NOT ASSUMED.—When appellant's manager, as vice-principal, had expressly promised to repair defective lines used by a driver of its milk wagon, such driver, as its servant, did not assume the risk by continuing in the use thereof for a reasonable time, but may recover for injury caused by the runaway of the driver's team, as the result of the breaking of the defective lines within such period of time as it would be reasonable to allow for the performance of the promise to repair the lines.

ID.—QUESTIONS OF FACT—NEGLIGENCE—INJURY WITHIN REASONABLE TIME—DETERMINATION AGAINST APPELLANT—SUPPORT OF FIND-

INGS.—The questions of appellant's negligence, and whether plaintiff continued his employment within a reasonable time when the injury occurred, were questions of fact to be determined by the trial court, and where its findings were in favor of plaintiff and against the appellant, it is held that this court cannot say that the evidence does not sustain the findings that appellant was negligent, and that plaintiff did not assume the risk of the defective lines during the reasonable time after the promise to repair when the injury occurred.

ID.—EXCLUSION OF RULE FOR REPORT TO BARN-MAN NOT PREJUDICIAL—REPORT TO BARN-MAN AND MANAGER—KNOWLEDGE OF APPELLANT.—The exclusion of a rule of the appellant company requiring reports of defects to be furnished to the barn-man was not prejudicially erroneous, where the report of the defective lines was first made to the barn-man, who referred him to the manager, to whom complaint of such defect was also made and who promised to remedy the same, and whose knowledge thereof was the knowledge of the defendant. It is immaterial whether such knowledge came through the rule or otherwise.

ID.—PROPER REFUSAL OF CONTINUANCE—ABSENT WITNESS—CUMULATIVE EVIDENCE.—It is held that, under the circumstances appearing in the record, the court did not err in refusing a continuance for a subpoenaed witness who left the state, where his evidence appears to be merely cumulative.

ID.—NEW TRIAL—NEWLY DISCOVERED EVIDENCE OF WITNESS PRESENT AT TRIAL.—The court did not err in refusing a new trial on the ground of newly discovered evidence of the president of the appellant, who was present during most of the trial, and knew of the importance of his testimony and failed to give it. It was also for the court to determine whether his proposed evidence would affect the result.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial. George E. Church, Judge presiding.

The facts are stated in the opinion of the court.

Hatch & Lloyd, for Appellant.

J. Vincent Hannon, and Hannon & McCormick, for Respondent.

ALLEN, P. J.—This appeal is by the Los Angeles Creamery Company alone, from a judgment and from an order denying a new trial.

The action was for damages on account of personal injuries.
The bill of exceptions presents evidence tending to show the
following facts: Plaintiff was employed by appellant as a
driver of a milk wagon. During the existence of such employ-
ment and a few days prior to and upon February 1, 1908,
plaintiff notified appellant's manager, with whom he had made
his contract of employment, that the lines furnished by ap-
pellant for use in guiding and checking the team of horses
used in drawing such milk wagon were defective, and that
unless they were made safe, or a new set furnished, plaintiff
would quit work. The manager promised plaintiff that he
would "take care of such lines" for plaintiff; that "we will
fix you up all right." Relying upon such promises, plaintiff
continued his work for the ten or twelve days succeeding. On
February 13th plaintiff made an effort to check the team
through the use of the lines, when the same parted at the
place where their weakness was evident and with reference to
which complaint had been made. The team thereupon became
unmanageable and plaintiff was thrown with his left foot
under a wheel in such manner as to cause serious and perma-
nent injuries. Appellant did not fulfill its promise of seeing
to the safety of the appliances in any way. By reason of said
injuries plaintiff was confined to his bed for several days under
a physician's care, and until about March 1st, when he was
able to undertake and perform the work of collecting for ap-
pellant, which he did with the assistance of his wife, and
continued in such work of collection until August 1st, al-
though much of the time he was unable to work. On the
last-named date, his injuries becoming more aggravated, he
ceased work, and has ever since suffered from such injuries.
This action was commenced in November, 1908. The trial
court found the facts as above stated; found that the creamery
company was negligent in not providing suitable and proper
appliances for the work incident to plaintiff's employment,
and that plaintiff was without fault.

Appellant's principal contention is that plaintiff could have
fixed, and it was his duty to fix, the lines so as to render them
safe, and that continuing in their use for the period of twelve
days, or thereabouts, with knowledge of their unsafe condition,
he assumed the risk of working with such defective appliances.
Section 1970, Civil Code, provides, in effect, that a servant

having knowledge of the unsafe character of appliances by him used shall be barred of recovery, if thereafter, with such knowledge, and understanding, comprehending and appreciating the danger incident thereto, he consents to or continues in the use thereof. This must be accepted as the law of this state, notwithstanding the rule that an employer is bound to furnish his employee with reasonably safe appliances to perform the work for which they are designed and to keep them in repair. When, however, as in this case, the master, through a vice-principal, has expressly promised to repair a defect, the servant can recover for the injury caused thereby within such period of time after the promise as it would be reasonable to allow for its performance, and, as said by the supreme court of the United States in *Hough* v. *Railroad Co.,* 100 U. S. 224, [25 L. Ed. 612], "as we think, for an injury suffered within any period which would not preclude all reasonable expectation that the promise might be kept." In *Martin* v. *California Cent. Ry. Co.,* 94 Cal. 331, [29 Pac. 646], it is said that "the plaintiff had a right to go to the jury on the question whether he was, under the circumstances, justified in going on with his work." And again, in *Rothenberger* v. *Northwestern Milling Co.,* 57 Minn. 461, [59 N. W. 531] : "It is sufficient if it appears that the servant was induced to remain in the master's service by reason of the promise to repair and that he had no intention of waiving his objection to the defect of which he complained." The question, then, as to whether plaintiff in the case under consideration continued his employment after the lapse of a reasonable time within which the master might fulfill his promise is one of fact. That matter the court determined adversely to appellant, and we are not prepared to say that the evidence did not support the finding of defendant's negligence, and that plaintiff did not assume all of the risk of his employment, which, of course, must be taken as including the risk incident to the use of the defective appliances for a limited period and after the promise to repair.

We see no prejudicial error in excluding evidence of the existence of a rule of the creamery company requiring reports as to the defective condition of appliances to be made to the barn-man. There was evidence tending to show that such

report was in fact made to such barn-man, who referred plaintiff to the manager, to whom complaint was in fact made. The knowledge imparted to the manager was knowledge to appellant, whether it came through a rule or otherwise.

We see no error in the action of the court in refusing, during the progress of the trial, to continue the same because a witness regularly subpoenaed by appellant, did not respond when called. It sufficiently appears that appellant's counsel knew before entering upon the trial that the witness was absent probably from the state, and that counsel "had suspicions" that he would not be present at the trial. In addition, the matter sought to be proven by the witness was cumulative, and, under all the circumstances furnished by the record, we think the court justified in denying the continuance.

Neither do we see any error in the order of the court refusing a new trial on account of newly discovered evidence. This evidence, as presented to the court through affidavits, was that of the president of the creamery company, who was present during most of the trial, and it is fair to assume that if the plaintiff upon the witness-stand made statements contrary to those theretofore narrated to the president, he had full knowledge of their importance, and his relations to appellant were such as required him to act promptly if he desired to contradict such statements of the plaintiff. The president, however, remained silent until after the trial, and then disclosed his information to the manager of the company. Aside from any other question connected with this motion for a new trial, it became the duty of the trial court to determine the effect which such newly discovered evidence would have had, if any, upon its decision had it been introduced upon the trial, and whether the same would have changed the decision had it been offered in due time. By the denial of the motion, it may be assumed that the court determined such matter in favor of plaintiff. Certainly, under this record, it cannot be said that the court abused its discretion in this regard, and we can conceive of no prejudice resulting to appellant, even were it to be assumed that certain counter-affidavits filed after the time limited by stipulation for the filing thereof were improperly considered.

A careful examination of the record indicates that the judgment of the court was proper and that no prejudicial error intervened during the progress of the trial.

The judgment and order are affirmed.

James, J., and Shaw, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 16, 1911.