[L. A. No. 2381.  In Bank.—October 5, 1911.]

HENRY NOTTHOFF, Appellant, v. LOS ANGELES GAS and ELECTRIC COMPANY (a Corporation), Respondent.

NEGLIGENCE—MASTER AND SERVANT—KNOWLEDGE BY EMPLOYEE OF UNSAFE CONDITION OF PREMISES—GENERAL RULE OF ASSUMPTION OF RISK.—It is a general rule that where an employee has full knowledge of the unsafe condition of the premises upon which he is working, he is deemed to assume the special risk incident to the employment under such conditions.

ID.—COMPLAINT AS TO UNSAFETY—PROMISE OF EMPLOYER TO REPAIR DEFECT—CONTINUANCE IN EMPLOYMENT—RISK NOT ASSUMED.—To this general rule there is the exception that where an employee notifies the master of a special risk, and objects to continuing the work under the existing conditions, and is induced to continue such work by a promise to remove the danger within a reasonable time, then for such time the employee is not presumed to assume such risk.

Id.—Employee Must Complain for Himself—Promise by Employer to Repair Essential—Reliance on Promise.—In order that an employee may invoke the benefit of such exception, there must not only be a complaint on the part of the employee himself of the defects or dangers arising in the employment and increasing the risk of continuing therein, but there must be a promise, either express or implied, made to him by his employer that he will obviate the defect or remove the danger, and which promise induced the employee to remain and upon which he acted.

Id.—Nonsuit—Evidence Insufficient to Show Complaint or Promise to Repair.—In an action by the employee, in which he attempts to establish a case within the exception, a nonsuit should be granted, if the evidence clearly fails to show that a complaint was made by the employee on his own behalf and a promise made to him to remove the defect, or if from such evidence as is presented no reasonable inference can be drawn by a jury that a complaint on his own behalf was made.

Id.—Sufficiency of Complaint—Notification to Leave Employment. —When complaining of defective instrumentalities or machinery, it is not necessary that the servant shall state in exact words that he apprehends danger to himself by reason of the defects, nor need there be a formal notification that he will leave the service unless the defects be remedied or repaired. It is sufficient if, from the circumstances of the case, it can be fairly inferred that the servant is complaining on his own account, and that he was induced to continue in the service by reason of the promise.

Id.—Complaint of Subordinate Co-employees—Evidence Warranting Submission of Case to Jury.—The fact that an employee, in complaining of a dangerous condition to which he as well as the men under him were subjected, stated that such men were making complaints, does not warrant the conclusive inference that he was complaining solely on account of the men and not on his own account as well. In the present case, it is held that the evidence, especially the fact that the plaintiff, prior to any occasion for complaint by the men, had spoken to the defendant's superintendent of the defect, and had characterized it as "very dangerous," and had asked him to "allow us" to adopt a temporary expedient to obviate it, warranted the submission to the jury, as a question of fact, whether his complaint was solely on behalf of the men, or included himself as well.

Id.—Intention in Making Complaint—Conduct and Language of Parties.—Whether in complaining of a dangerous condition the employee is making it in an apprehension of danger to himself or not is always a question of intention, which is to be determined from the language and conduct of the parties to the complaint, construed in the light of the circumstances under which the complaint is made.

Id.—Nature of Complaint When Question of Law or Fact—Ambiguous Evidence—Nonsuit.—If such facts show conclusively that the

complaint was made by the employee without apprehension of danger to himself, a question of law for the court is presented, on motion for a nonsuit. If, on the other hand, under the evidence, different conclusions on the subject or different inferences might be drawn, a question of fact is presented to be submitted to the jury, and it is error to grant a nonsuit.

ID.—EVIDENCE OF EMPLOYEE'S RELIANCE ON PROMISE TO REPAIR.—In such action by the employee, evidence is admissible that he relied on the employer's promise to remove the danger, and that he continued in the employment in the reliance on such promise.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order refusing a new trial. Walter Bordwell, Judge.

The facts are stated in the opinion of the court.

Smith, Miller & Phelps, for Appellant.

Wm. A. Cheney, LeRoy M. Edwards, Gibson, Trask, Dunn & Crutcher, and N. S. Sterry, for Respondent.

LORIGAN, J.—This is an action to recover damages for personal injuries.

The trial court granted a nonsuit at the close of the evidence of plaintiff, and from the judgment entered thereon and an order denying his motion for a new trial plaintiff appealed.

This appeal was first heard before the district court of appeal for the second appellate district where the judgment was affirmed, and on application therefor a further hearing in this court was granted.

The principal question presented on the appeal is relative to the correctness of the ruling of the trial court granting the nonsuit.

Plaintiff was an experienced engineer, forty-four years of age, and at the time of the accident, which occurred on July 5, 1907, was and for some time prior thereto had been the chief engineer in charge of the electric station of defendant. Connected with the engine room at this station was a pump room constructed below the level of the ground, the floor of which room inclined to the corner thereof, where a cement pit, known as a sump hole, was located. There were other

sump holes in the pump room, but the one to which the evidence in the case was particularly directed was the one near the corner of the pump room. The purpose of this pit was to receive the waste or overflow of hot water which escaped from the water heaters located in this room and used in connection with the boilers. At times the quantity and temperature of the water which escaped from the heaters was such that it filled this sump hole with boiling hot water. A small pump was connected with this pit which ordinarily afforded a means of emptying it by pumping the water out. On the day of the accident plaintiff was engaged in the installation of a thermometer in the suction pump which forced the water from the heaters to the boilers. In doing this work it became necessary to temporarily shut down the heaters, three in number. During the progress of the work and before it was completed, a large quantity of hot water escaped from the heaters, which, owing to the fact that the pump connected with the sump hole was necessarily stopped, filled the hole and covered the floor. Upon the thermometer being installed, two of the heaters were turned on and the suction pump started. The sump hole was located between the south wall and the third heater, and owing to the fact that the floor was covered with hot water it was necessary to walk upon bricks which had been laid upon the edge of the sump hole in order to reach the valve the opening of which was necessary to start the third heater. Plaintiff directed one of the men under him to turn on the third heater. The man reported to plaintiff that he was unable to do so, owing to the fact that the wrench given him for the purpose was too small; whereupon plaintiff himself took a wrench and turned the valve which started the heater. In returning plaintiff stepped upon the loose bricks laid along the edge of the sump hole and in some way slipped and fell into the pit, which at the time was filled with hot water, whereby he received the injuries which resulted in the damage which he claims to have sustained. There was other machinery requiring men to go around this sump hole. The corner was dark; there were no artificial lights and the windows were located in such a position that light would not fall from them in the direction of the sump hole, and at the time of the accident the plaintiff, with the other employees, were hurrying as much as pos-

sible to do the work in which they were engaged, as the time therefor was very limited.

The evidence shows that at the time of the accident, and for a long time prior thereto, plaintiff was and had been familiar with the existence and location of this pit. He was present when it was constructed; he was aware of its unprotected condition, and knew that it was uncovered and filled with hot water.

Plaintiff based his right to recover in this action on the ground, as alleged in his complaint, that prior to the accident he notified the defendant of the special risk due to the unprotected condition of the sump hole, "and that the defendant upon being informed by the plaintiff of the exposed condition of said sump hole, promised plaintiff to cover and repair the same, and that the plaintiff relying upon and because of said promise continued said employment."

The general rule is that where an employee has full knowledge of the unsafe condition of the premises upon which he is working, he is deemed to assume the special risk incident to the employment under such conditions. (*DeForest* v. *Jewett,* 88 N. Y. 264; *Week* v. *Fremont Mill Co.,* 3 Wash. 629, [29 Pac. 215]; *Bush* v. *Wood,* 8 Cal. App. 647, [97 Pac. 709]; *St. Louis Cordage Co.* v. *Miller,* 126 Fed. 495, [66 C. C. A. 477, 63 L. R. A. 551].)

Upon this general rule is engrafted a well established exception that where "an employee notifies the master of a special risk, and objects to continuing the work under the existing conditions, and is induced to continue such work by a promise to remove the danger within a reasonable time, then for such time the employee is not presumed to assume such risk." (Beach on Contributory Negligence, sec. 372; *Hough* v. *Texas & Pac. R. R. Co.,* 100 U. S. 213, [25 L. Ed. 612]; *Anderson* v. *Seropian,* 147 Cal. 201, [81 Pac. 521].)

The allegation of the complaint above referred to brought the case of the plaintiff within the exception to the general rule, and the question presented on this appeal is, was the evidence produced by plaintiff at the close of his case sufficient to sustain it?

In support of this allegation plaintiff testified as follows:—

"I informed him (the superintendent) of the exposed condition of this sump hole and all others on several occasions.

CLXI Cal.—4

I said some of the men came to me and told me that those holes were dangerous and ought to be covered up; and I went to my boss, the superintendent, Miller, and spoke about it.

The Court: "I thought you were telling what you said to him?"

A. "I told Mr. Miller some of the men were complaining of the dangerous condition of those holes, and if they demanded them to be covered up, for the safety of those men I would be in favor of having them covered up at once."

The Court: "What did you say to Mr. Miller other than what you have already stated, if anything?"

A. "I believe I said I would be highly in favor if these holes would be made permanently safe, so further complaint would not be received."

Q. "Do you think that is all you said?"

A. "My time being limited, I believe that was all I said. Mr. Miller said he would take the matter up at once and have them covered up permanently with material that would not burn, so that they would not have to be disturbed again. This was about a week before the accident happened. I had a conversation prior to that time about the matter—may be two or three weeks—and told him practically the same thing."

Q. "That is, when you say 'practically the same,' you told him that some of the men told you they thought the holes ought to be covered up?"

A. "Yes, sir."

Q. "And that you told them you would speak to Mr. Miller about it; did you tell him that?"

A. "Yes, sir. Those two conversations were the only conversations I ever had with him on that point. Mr. Miller said to me that he would take the matter up at once and have those holes covered up with material that would be allowed to be left there."

Q. "Did you say anything at that time about being afraid yourself?"

A. "No, sir; I did not. My business did not bring me in close vicinity of those holes much. Mr. Miller came to me and told me that the president of the company had been down there on inspection and discovered all these holes covered up with wooden planks. He told Mr. Miller those planks had to come out at once, or someone would lose his job. Mr. Miller came

to me and told me I would have to take those planks off of those holes, uncover the holes. I asked Mr. Miller to give me authority to leave those planks there because the men were everlastingly complaining."

Q. "Were you afraid of falling in?"

A. "Yes, sir. Mr. Miller said he had no authority to and he could not give permission to leave those planks over the holes. Then I gave orders to three men, being close by me, to go down below and uncover those holes, taking those planks out and carrying them out in the yard. I told him it was very dangerous; that if they would not allow us to keep the holes covered up with wooden planks to give us some material to cover them up with that would not burn. Mr. Miller answered that he would take the matter up at once, and have the holes fixed so that there would be no further trouble on that point. He said he would take the matter up at once, but he did not have them fixed up until I got hurt. I knew the one I fell into had not been fixed."

Q. "You had been by there, you passed that sump hole probably every day?"

A. "No, sir; never before in my life."

Q. "Was that (the occasion of the injury) the first time you had ever passed it?"

A. "Yes, sir."

The foregoing presents the evidence upon which the trial court granted the nonsuit, holding, as did the district court of appeal, that it conclusively showed that the complaint of plaintiff to the defendant concerning the dangerous condition of the sump holes was not made in his own behalf, but solely on account of the men employed under him, and hence did not bring him within the exception to the general rule, which only applies in favor of an employee who himself complains of the danger, or in favor of those in whose behalf the complaint is made.

There can be no question but under the great weight of authority, in order that an employee may invoke the benefit of the exception to the general rule heretofore stated there must not only be a complaint on the part of the employee himself of the defects or dangers arising in the employment and increasing the risk of continuing therein, but there must be a promise, either express or implied, made to him by his

employer that he will obviate the defect or remove the danger, and which promise induced the employee to remain and upon which he acted. (Bailey on Master's Liability for Injury to Servants, p. 212.)

So that if in an attempt to establish a case within the exception, the evidence clearly fails to show that a complaint was made by the employee on his own behalf and a promise made to him to remove the defect, or if from such evidence as is presented in the case no reasonable inference could be drawn by a jury that a complaint on his own behalf was made, it is proper to refuse to submit the case to them and a nonsuit should be granted.

In the matter at bar there is no question but that the evidence showed a promise to obviate the danger arising from the uncovered condition of the sump holes, the sole question being as to whether the evidence was sufficient to show that the complaints respecting their dangerous condition were made by plaintiff on his own behalf as well as on behalf of the men working under him, or, if the evidence does not show that he made explicit complaint on his own account, were all the facts and circumstances surrounding and accompanying the complaints which were made sufficient to warrant an inference on the part of the jury that he was complaining not only on behalf of the men, but on his own behalf as well, and was it so understood by defendant?

The trial court in granting the nonsuit, and the district court of appeal in affirming the judgment thereon, were of the opinion that the evidence not only did not directly establish the fact that plaintiff was complaining of danger in his own behalf, but that no reasonable inference could be drawn from any of the evidence in the case that he was. In this respect, upon a careful consideration by us of the evidence, we are of the opinion that both the superior court and the district court of appeal were in error in their view respecting the effect of it, at least to the extent of holding that it was insufficient to warrant any reasonable inference on the part of a jury that any complaint of the dangerous condition of the sump holes was so intended to be presented by plaintiff on his own account as well as on behalf of the men.

In Labatt on Master and Servant, it is said: "When complaining of defective instrumentalities or machinery, it is not

necessary that the servant shall state in exact words that he apprehends danger to himself by reason of the defects, nor need there be a formal notification that he will leave the service unless the defects be remedied or repaired. It is sufficient if, from the circumstances of the case, it can be fairly inferred that the servant is complaining on his own account, and that he was induced to continue in the service by reason of the promise." In *Rothenberger* v. *Northwestern Con. Milling Co.*, 57 Minn. 461, [59 N. W. 531], the court uses this language: "It is true, that the plaintiff when complaining of the gearing into which his hand was afterward drawn, did not notify defendants' head millwright or foreman that unless covering were put upon the exposed and dangerous machinery he should quit defendants' employ, nor did he say in so many words that he apprehended danger to himself; but positive assertions and statements of this character are not absolutely necessary. According to the best considered cases the real question to be determined is, whether under the circumstances, as they appear in each case, the master had a right to believe, and did believe, that the servant intended to waive his objection to the defect of which he has complained. This is a question of fact, not of law, and consequently for the jury, at least if not entirely free from doubt."

Examining the evidence under these rules. There was, by reason of the exposed condition of the sump holes, a present continuing danger of injury to any of the employees of defendant who had occasion to work in their vicinity, including the plaintiff. It may be conceded that there was greater danger therefrom to be apprehended by the employees working under plaintiff than by plaintiff himself, whose duties, as he testified, did not call him to the vicinity of this sump hole much, though he apprehended therefrom danger to himself. Under these circumstances he made complaint to the superintendent of defendant of this dangerous condition, which the superintendent fully recognized as existing, and promised to remedy; a dangerous condition which he must be presumed to have known involved peril to all—the plaintiff as well as the men under him—whose duties called or might call them to work about these sump holes. On the occasions when plaintiff spoke to the superintendent upon the subject it is true that he said the men were complaining about the

danger, and that he did not directly refer to any apprehension of danger on his own account. But the fact that in complaining of the danger he stated that the men were making complaints, warranted no conclusive inference that he was complaining solely on account of the men and not on his own account as well. It was his duty to the company and to the men who were under him, when danger existed, to call attention to it, with a view to its removal, and it would only be natural—at least the jury might so infer—that in making complaint of such a danger common to all whose duties required them to work about the sump holes—himself as well as the men—that he should refer particularly to the complaints made by the men, as representing the greater number exposed to the danger, and whose safety required its removal, rather than to any danger apprehended by himself. His exposure to danger, while it existed, was not as great as that to which the men were exposed. Their greater danger would be the prominent matter in his mind in making the complaints, and in doing so he would naturally refer to these complaints as explanatory of the reason why he was endeavoring to have the danger removed.

So that, taking into consideration the fact that in making his complaint to the superintendent he referred only to complaints of the danger which the men were making, there is nothing in that circumstance which warranted a conclusive inference that the plaintiff intended to convey the impression that he did not desire the danger to be removed on his own account, but solely on behalf of the men; there was nothing in the language used by plaintiff on the different occasions when he made the complaints to the superintendent which necessarily indicated that the sole reason why he made them was because the men were apprehensive of danger, but that as far as he was concerned he was willing to assume the risk.

Now, as we say, while the mere circumstance that the plaintiff ostensibly complained of the danger in behalf of the men, taken into consideration with the other circumstances attending the making of the complaints to which we have referred, warranted no conclusive inference that he was not complaining also on his own account, and hence would not justify an order granting a nonsuit, it is quite apparent, we think, when all the facts and circumstances in evidence are considered

that the question whether the plaintiff intended also to complain of the danger in his own behalf, and whether defendant so understood it, were questions solely for the determination of the jury. These facts and circumstances, in addition to those already stated, are not many, but they are important.

The testimony of plaintiff is not very clear as to the sequence of events—that is when the conversations between him and the superintendent occurred where reference was made of the complaints by the men. It appears that the sump holes had been covered with wooden planks and were so covered at the time when the president on an inspection of the premises peremptorily ordered the covers removed and the superintendent instructed plaintiff to do so. Notwithstanding this order plaintiff endeavored to prevail on the superintendent to have them left there, which was refused. In regard to this matter plaintiff testified, "I told him it was very dangerous; that if they would not allow us to keep the holes covered up with wooden planks, to give us some material to cover them up with that would not burn up." It must have been after this conversation that the plaintiff spoke to the superintendent of the continuing danger and mentioned the complaints of the men, because it could only be after the wooden covers were removed that there would be any occasion for complaint, yet at the very time that the order for the removal of the covers was given, and after an endeavor to persuade the superintendent to allow them to remain, and when no occasion had yet arisen for any complaint by the men, we find the plaintiff declaring to the superintendent that it was "very dangerous" to leave these holes uncovered, and if they would not "allow us" to keep the holes covered with the wooden planks to "give us" some material to cover them up with that would not burn.

Whatever may be said about inferences to be deduced from the statement of plaintiff relative to the men complaining of the dangerous condition of the sump holes, which must obviously have been made after the planks were removed, certainly the statement made by the plaintiff immediately above referred to and at the time when the planks were removed, or about to be removed, was sufficient to require the determination of whether the use of the expression "us" embraced a complaint respecting the dangerous position in be-

half of plaintiff as well as that of the men under him.

Other suggestions in this same line might be made under the evidence, but it is unnecessary to do so as what we have said sufficiently indicates that the condition of the evidence in the case was not such that the court, as matter of law, could declare that no other conclusion or inference could be drawn from it than that the plaintiff had not complained of the danger on his own account, but solely on account of the men under him, and that as far as he was concerned he assumed the risk of the increased danger in the employment. On the contrary, the condition of the evidence was such that, whether his complaint was solely on behalf of the men, or included as well himself, was a question of fact for the jury. Whether in complaining of a dangerous condition the employee is making it in an apprehension of danger to himself or not is always a question of intention, and as in cases of this character the rule is well settled that in making such complaint no formal notification or explicit statement of the apprehension of danger to the employee himself is necessary, the intention with which he complains is to be determined from the language and conduct of the parties to the complaint, construed in the light of the circumstances under which the complaint is made.

If these show conclusively that the complaint was made by the employee without apprehension of danger to himself, a question of law for the court is presented. If, upon the other hand, under the evidence, different conclusions on the subject or different inferences might be drawn, a question of fact is presented to be submitted to the jury. In this case, as there was room for different inferences to be drawn under the evidence, it was error for the trial court to take the case from the jury and grant a nonsuit.

Complaint is made by appellant of many rulings of the court as to the admission of evidence. These rulings were correct, save that the court should have allowed the appellant to show, as he endeavored to do, that he continued in the employment of defendant relying on the promises of the superintendent to remove the danger from the exposed sump holes by having them covered up. This was competent evidence; in fact it was necessary in addition to proof of complaint of their condition by plaintiff and promise by de-

fendant to remove the danger, for him to also prove reliance on the promise to remove it, and that he continued in the employment in reliance on it. It is only proper to say in this connection that the rulings of the trial court in rejecting proof of these matters were based on the view that the evidence then before the court did not show any complaint made by plaintiff on his own behalf, and hence, in the then aspect of the case, this evidence was immaterial. .

On behalf of respondent it is urged that, even if there was sufficient evidence in the case from which a jury might be warranted in finding that the plaintiff was complaining of the dangerous condition of the sump holes on his own account, and hence the nonsuit was not warranted on the assumption by the court that there was no proof of this fact, still the evidence conclusively showed that the plaintiff was guilty of contributory negligence in going along the edge of the sump hole to adjust the valve on the heater near it. The claim is that there were two safer and more convenient ways to approach the valve, one by going under the heater, the other by going around the northern end of the heater and doing so. It may be conceded that under ordinary conditions this would be true, but the evidence in this case shows that going around the sump hole was one of the ways and the customary way taken by the men to reach the valve, and at the time of the accident was the only convenient and practical way which could be taken, because the floor around and under the heater to which the valve was attached was covered with hot water.

The judgment and order appealed from are reversed. .

Henshaw, J., Melvin, J., Angellotti, J., Sloss, J., and Shaw, J., concurred.