[L. A. No. 11017.   In Bank.—August 31, 1931.]

WILLIAM A. HOOGBRUIN, Appellant, v. ATCHISON,
    TOPEKA and SANTA FE RAILWAY COMPANY
    (a Corporation), Respondent.

Bertrand J. Wellman for Appellant.

Robert Brennan, M. W. Reed, Leo E. Sievert, E. T. Lucey and H. K. Lockwood for Respondent.

CURTIS, J.—This action was originally appealed to the District Court of Appeal, Fourth District, which court, upon submission of the case, affirmed the judgment of the trial court. We granted a petition for a transfer thereof to this court for the reason that we were not satisfied with that portion of the decision of the appellate court wherein it held that as the appliance by the use of which the plaintiff was injured was of a simple construction he had assumed the risk thereof, and was therefore precluded from recovering for his injuries, notwithstanding he had made complaint to the conductor of the defect in said appliance and was ordered by the conductor to use the same. The following portion of the opinion of the District Court of Appeal, however, we approve, and adopt the same as the opinion in part of this court. It is as follows:

"This is an appeal by plaintiff from the judgment of the trial court made and entered after it had granted the motion of defendant for a directed verdict at the conclusion of the trial wherein evidence on the part of both plaintiff and defendant had been presented. The action was one for the recovery of damages for the injuries sustained by plaintiff by reason of the alleged negligence of defendant in failing to provide a safe place in which to work and safe appliances for use by plaintiff, who was an employee of defendant.

"At the time when the injury of which plaintiff complains was sustained by him he was employed by the defendant in the capacity of head brakeman on a freight train operating between San Bernardino, California, and San Jacinto, Cali-

fornia, and while he was engaged in unloading certain merchandise from a freight car of said train onto a station platform at March Field in the county of Riverside, California. The merchandise which at the time was being unloaded by plaintiff was merchandise which had been shipped from some point in the state of Oregon. For the purpose of conveniently unloading freight from trains of the defendant at the March Field depot two planks had been used. These planks were approximately 7 feet long, 6 inches wide and 2 inches thick. The ends of the planks were placed on the depot platform and the other ends extended about 6 inches into the freight car from which freight was to be unloaded, thus making a sort of runway. The planks were so placed that there was a distance of not to exceed 2 feet between their inner edges. The plaintiff had on a number of occasions made use of these boards in unloading freight at the March Field depot. However, the evidence discloses that complaint had been made by plaintiff and the rear brakeman to the conductor of the train in regard to the use of the planks and that plaintiff had asked for a bridge. On the day on which plaintiff sustained his injuries a piece of boiler plate approximately 4 feet long, 3 feet wide and ½ inch thick and weighing about 75 pounds was sent out by defendant to be placed on the planks. This boiler plate is generally referred to in the testimony of the witness as a steel apron. Plaintiff assisted in unloading it from the express car of the train onto the depot platform. This steel apron was then placed upon the two planks and it was at once apparent that it was not of sufficient length completely to cover over the aperture between the planks and as it was finally placed, there remained an opening about 3 feet long and from 1½ to 2 feet wide at the ends of the planks near the depot platform. The testimony indicates that plaintiff thereupon objected to the use of the steel apron, declaring that he preferred to use the planks without the steel apron. The conductor, however, said that as long as the steel apron had been sent out they would use it, but that he would get another on the following day. Thereupon, the plaintiff procured a small merchandise truck from the depot and conducted it over the runway into the box car where it was loaded with about 250 to 300 pounds of merchandise. The plaintiff, walking backward, then pulled this truck so loaded, on to

the runway and when the steel wheels of the truck came in contact with the steel apron the weight of the loaded truck shoved the plaintiff backward so that he fell in the aperture near the depot platform and sustained the injuries of which he complains.

"The evidence discloses that at the time plaintiff was injured he was 28 years of age and had been employed on different railroads in various capacities for about 7½ years prior to his accepting employment with the defendant in the month of July, 1927.

"It is alleged in the first paragraph of plaintiff's complaint that the defendant is a corporation duly organized under the laws of the state of Kansas and engaged in the operation of an interstate steam railroad between the cities of Chicago in the state of Illinois and Los Angeles in the state of California. In the second paragraph of the plaintiff's complaint it is alleged that on August 8, 1927, the date on which plaintiff was injured, he was transferring freight from a car containing interstate shipments onto the station platform of the defendant at March Field in the county of Riverside. Neither of these allegations is denied by defendant and the record further discloses that at the time plaintiff was injured he was engaged in transferring merchandise shipped from some point in Oregon from a freight car of defendant onto the station platform at March Field. ■

We have here, therefore, the case of an employee of a railroad engaged in interstate commerce, who at the time he was injured, was employed in interstate commerce. This state of facts brings the instant case squarely under the operation of the provisions of the Federal Employers' Liability Act. And this act is the exclusive remedy, as was pointed out by the Supreme Court of California in the case of *Hines* v. *Industrial Acc. Com.*, 184 Cal. 1 [14 A. L. R. 720, 192 Pac. 859].

"Since the Federal Employers' Liability Act provides the exclusive remedy in a case of this character, the question of substantive liability is to be determined by the provisions of the act and federal decisions construing such provisions. That all state laws upon the subject of the employer's liability to the employee in interstate transportation by rail have been superseded by the federal act, since congress by its enactment took possession of the field of such liability, was unequivocally announced in the case of *Seaboard Air Line Ry.* v.

*Horton,* 233 U. S. 492 [Ann. Cas. 1915B, 475, L. R. A. 1915C, 1, 58 L. Ed. 1062, 34 Sup. Ct. Rep. 635, 8 N. C. C. A. 834]. Our own Supreme Court has likewise so declared in the case of *Smithson* v. *Atchison etc. Ry. Co.,* 174 Cal. 148 [162 Pac. 111], wherein numerous decisions of the United States Supreme Court were cited and it was clearly decided that in actions brought in the state courts under the provisions of the Federal Employers' Liability Act, the decisions of the Supreme Court are controlling in the construction of the act. This was also the holding of the California Supreme Court in the case of *Hines* v. *Industrial Acc. Com.,* 184 Cal. 1 [14 A. L. R. 720, 192 Pac. 859]. The same conclusion was reached by the Appellate Court of California for the Second Appellate District in the case of *Werner* v. *Southern Pacific Co.,* 44 Cal. App. 76 [185 Pac. 1016]. Authorities might be multiplied on this point, but perhaps it is nowhere more clearly stated than by the supreme court of Washington in the case of *Bolch* v. *Chicago etc. Ry. Co.,* 90 Wash. 47, 155 Pac. 422, 426, wherein the court said: 'We shall not review the many decisions of the state courts cited by respondent, since in any event we are bound by the federal decisions and especially the recent decisions of the United States Supreme Court upon the subject.'

''Having arrived at the conclusion that in the instant case the Federal Employers' Liability Act furnishes the exclusive remedy and that the question of substantive liability is to be determined by it and that we are bound by the construction placed upon its provisions by the federal courts, we shall next consider whether the trial court erred in granting respondent's motion for a directed verdict at the conclusion of the trial. ■ The solution of this problem involves a determination of whether under the facts delineated in the record it may be said as a matter of law that the appellant assumed the risk of using the particular appliance which it is claimed was defective and through whose use appellant received the injuries of which he complains. For the purposes of this decision it may be assumed that the appliance was defective in that the so-called steel apron was not of sufficient length entirely to cover over the aperture between the planks that were placed to form a sort of runway between the freight car and the depot platform; that an opening about 3 feet in length and not more than 2 feet in width remained

near the depot platform; that appellant observed the defectiveness of the runway and objected to the use of the steel apron, declaring that he preferred to use the planks as had theretofore been done without the steel apron; that the conductor of the train, who was appellant's superior, stated that since the steel apron had been sent down it would be used, but that another apron would be provided on the following day. Under this state of the facts it is earnestly contended by appellant that he did not as a matter of law assume the risk of using the defective runway and that the trial court erred in refusing to submit to the jury the question of whether or not appellant had assumed the risk.

"The rule of the common law with respect to the assumption of risks of employment is declared by Mr. Justice Pitney in the case of *Arizona Copper Co.* v. *Hammer,* 250 U. S. 400 [6 A. L. R. 1537, 63 L. Ed. 1058, 39 Sup. Ct. Rep. 553], as follows:

" 'It is to be borne in mind that the matter of the assumption of the risks of employment and the consequences to flow therefrom has been regulated time out of mind by the common law, with occasional statutory modifications. The rule existing in the absence of statute, as usually enunciated, is that all consequences of risks inherent in the occupation and normally incident to it are assumed by the employee and afford no ground of action by him or those claiming under him, in the absence of negligence by the employer; and even risks arising from or increased by the failure of the employer to take the care that he ought to take for the employee's safety are assumed by the latter if he is aware of them or if they are so obvious that any ordinarily prudent person under the circumstances could not fail to observe and appreciate them; but if the employee, having become aware of a risk arising out of a defect attributable to the employer's negligence, makes complaint or objection and obtains a promise of reparation, the common law brings into play a new set of regulations requiring the employer to assume the risk under certain circumstances, the employee under others.'

"In support of this statement of the rule the court cites the case of *Seaboard Air Line Ry.* v. *Horton,* 233 U. S. 492 [Ann. Cas. 1915B, 475, L. R. A. 1915C, 1, 58 L. Ed. 1062, 34 Sup. Ct. Rep. 635, at 640], where it is said:

" 'When the employee does know of the defect, and appreciates the risk that is attributable to it, then if he continues in the employment without objection, or without obtaining from the employer or his representative an assurance that the defect will be remedied, the employee assumes the risk, even though it arise out of the master's breach of duty. If, however, there be a promise of reparation, then during such time as may be reasonably required for its performance, or until the particular time specified for its performance, the employee, relying upon the promise, does not assume the risk unless at least the danger be so imminent that no ordinarily prudent man under the circumstances would rely upon such promise.'

"It is the exception to or modification of the general rule providing that in those cases where there is a promise of reparation upon which the employee relies during such time as may be reasonably required for its performance upon which appellant relies and which he contends warrant a reversal of the judgment in the instant case.

"In opposition to appellant's position respondent contends that assuming that the record herein discloses clearly and unequivocally a promise of reparation by the employer and a reliance on such promise by the employee, nevertheless the appellant must fail in his appeal because the appliance of whose defectiveness he complains was a simple appliance with which he was entirely familiar and whose defects were patent and obvious to him. That he was aware of the defective condition of the runway can scarcely be said to be open to doubt inasmuch as the record discloses that appellant testified that he objected to the use of the steel apron, declaring that he preferred to use the planks without the apron."

It is to be further borne in mind that appellant was a man of at least seven and a half years' experience in railroad work, a mature man, and that he had on a number of occasions utilized the two planks hereinabove described for the purpose of unloading freight at the place where he suffered the injuries of which he complains.

Taking all of these facts and circumstances into consideration the question is presented as to whether this is a proper case for the application of the simple tool doctrine. The steel apron was something entirely new. It had been

sent out for use as this particular station on the very day
the accident happened. While the plaintiff was an ex-
perienced railroad man, there is no evidence that he had
ever used such an appliance before or that he had ever seen
one in use. As to whether this appliance, as made up of the
two planks and the apron, was so simple in construction that
the danger of using it was so obvious and imminent that an
ordinarily prudent person would not undertake to do so
presents a question not free from doubt. It is true that the
plaintiff objected to its use fearing that it might prove
dangerous. On the other hand, the conductor, a person pre-
sumedly of greater experience, directed the plaintiff to use it
in unloading the freight from the car. It is inconceivable
that the conductor would have given this direction had he
considered the appliance so defective in construction that the
danger of using it was obvious and imminent. In order to
relieve the employer from responsibility for injuries that
befall an employee while remaining at his work, after he has
complained of defective apparatus and the employer has
agreed to make reparation and has directed the employee
to continue his service, a very plain case must be made out
against the employee before the court will be justified in
holding as a matter of law that the employee has assumed
the risk of his employment under such circumstances. It
was so held in the case of *Seaboard Air Line Ry.* v. *Horton,*
239 U. S. 595, 599 [60 L. Ed. 458, 36 Sup. Ct. Rep. 180, 182],
where the court declared the law in the following language:

"To relieve the employer from responsibility for injuries
that may befall the employee while remaining at his work
in reliance upon a promise of reparation, there must be
something more than knowledge by the employee that danger
confronts him, or that it is constant. The danger must be
imminent—immediately threatening—so as to render it
clearly imprudent for him to confront it, even in the line
of duty, pending the promise. The danger of the explosion of
the water-glass, which normally should withstand the pressure
to which it was subjected but which might probably explode
at some time near or remote, cannot be said, as matter of
law, to have been so imminent as to import an assumption
of the risk by Horton notwithstanding the employer's
promise to replace the guard-glass. It would require a much

plainer case than this to justify taking the question from the jury.''

In that case the defect in the appliance was the absence of a small guard-glass to protect the engineer from injury in case of the explosion of the water-glass. This guard-glass was two or three inches wide, eight or nine inches long and about half an inch thick. Without this guard-glass the engineer was exposed to the danger of an explosion of the water-glass. The court, however, held that this danger from explosion was not as a matter of law so imminent as to import an assumption of risk by the engineer in continuing in his work after being directed by his employer to do so and in relying upon the employer's promise to procure a guard-glass in the future. So in the case here, the appliance consisting of the two planks had been used in the past without any fatal or serious results as far as the evidence in this case shows. This appliance with the addition of the steel apron could be used without necessarily inflicting any injury upon the employee. The two planks were in their accustomed place and the hand truck used in unloading freight could be wheeled over them after the steel apron was put in place the same as it could before. The truck, of course, ran more freely over the steel surface after the apron was made a part of the appliance than it formerly did over the planks. It would perhaps require more care and greater caution to operate this appliance after the steel apron was put in place than before, but as it could, after the addition of the apron even in its defective form, be operated with safety although greater care might be required in its operation, it may well be questioned whether the danger in its use was so ''imminent and immediately threatening'' that a prudent person would not attempt its use. At least the case is not so plain that the court can say as a matter of law that in using it under the circumstances shown, the plaintiff assumed the risk of his employment.

The law is well established that before a servant can be held to have assumed the risk in using even simple tools, after complaint to his employer and promise of reparation by the latter, the danger must be so obvious and imminent that no prudent person would undertake the service. (39 Cor. Jur., p. 790, sec. 989.) Measured by such a standard, the conduct of the plaintiff under the facts shown cannot by

any reasonable construction thereof, be held as a matter of law to have amounted to an assumption of the risks of his employment.

"Although the defense of assumption of risk is established as a part of the law and will be applied in all cases fairly within the rule, it is, nevertheless, not a favored doctrine, . . . and should not be extended beyond its reasonable limits." (39 Cor. Jur., p. 689, sec. 891.) We think this statement of the law is directly applicable to the facts before us, and that it would indeed be an extremely harsh rule that would hold that the plaintiff in executing the orders of the conductor under the circumstances shown, had as a matter of law assumed the risks of his employment. He had never before operated an unloading appliance like the one in question. He objected to its use, but was assured by the conductor that a new one would be provided on the following day, and in the meantime the one furnished by the company would be used. He was entitled to rely in a large extent upon the conductor's superior experience and greater knowledge, and it seems unthinkable under these conditions that he would be held as a matter of law to have assumed the risk of using the defective appliance.

In the case of *Atlantic Coast Line R. Co.* v. *Banks,* 288 Fed. 826, 828, under facts somewhat similar to those before us, the court said, "There is nothing in the case which would have justified the court below in holding that, as a matter of law, plaintiff assumed the risk of possible injury. He says he had never before handled any freight of the kind. He was entitled to rely upon his foreman's better knowledge, unless he could for himself see and appreciate the danger. Whether he could or should have done so was also a question for the jury." In *Fillippon* v. *Albion Vein Slate Co.,* 250 U. S. 76 [63 L. Ed. 853, 39 Sup. Ct. Rep. 435, 437], the court quotes with approval from the Supreme Court of Pennsylvania, *Williams* v. *Clark,* 204 Pa. St. 416, 418 [54 Atl. 315], and approves the law there stated as follows: "'If the master gives the servant to understand that he does not consider the risk one which a prudent person should refuse to undertake the servant has a right to rely upon his master's judgment, unless his own is so clearly opposed thereto that, in fact, he does not rely upon his master's opinion. A servant is not called upon to set up his own unaided judg-

ment against that of his superiors, and he may rely upon their advice and still more upon their orders, notwithstanding many misgivings of his own. The servant's dependent and inferior position is to be taken into consideration; and if the master gives him positive orders to go on with the work, under perilous circumstances, the servant may recover for an injury thus incurred, if the work was not inevitably and imminently dangerous.' "

We particularly call attention to the closing words of this paragraph, "If the work was not inevitably and imminently dangerous." We think it sufficiently appears in this case from the facts stated above, that the work which the plaintiff was called upon to perform was not as a matter of law either "inevitably or imminently dangerous".

In Ruling Case Law, we find the law on this subject stated as follows (vol. 18, p. 704, sec. 187): "The fact that the employee acted pursuant to an immediate command is a cogent evidentiary fact bearing on this issue. Inasmuch as commands usually proceed from persons having superior knowledge, it may be presumed in case an employee is ordered to do certain work that the employer has superior knowledge of the perils attending performance; and in the absence of anything to the contrary, or where the case otherwise is in doubt, this presumption must prevail in behalf of the plaintiff." Concluding this subject, the author on page 705 has the following to say regarding nonsuits and directed verdicts in cases of this kind, "While there may be cases disclosing such manifest danger to the employee that the court may direct a nonsuit or verdict for the employer, it generally is held to be for the jury to say whether the employee, in acting pursuant to orders or assurances, knew and appreciated the peril. The tendency of the modern cases is to permit a recovery unless the employer's direction calls for nothing less than recklessness on the part of the employee, leaving no ground for difference of opinion as to the peril of acting pursuant thereto."

We might add to the above authorities many others from our federal and state courts expounding the same doctrine. These mentioned we think are sufficient to show that the courts have with reasonable uniformity held that a servant does not assume the risk of his employment after complaint and promise of reparation, except in those cases where the

work is obviously, imminently and inevitably dangerous. We are satisfied that the evidence before us does not present a state of facts where the dangerous character of the work was so obvious and imminent as to constitute this a proper case for the application of the simple tool doctrine.

We are not unmindful of the fact that there are many authorities from courts of the highest standing and repute holding contrary views from those above expressed, but in our judgment the rule which we have followed is more in harmony with the trend of modern decisions as well as recent legislation upon the respective rights and liabilities of employers and employees. In many instances, the doctrine of assumption of risk has been entirely repudiated by legislative enactment. The federal Employers' Liability Act has, in certain character of actions, deprived an employer of such defense, but it has been held that its provisions in this regard do not extend to actions like the instant one. (*Seaboard Air Line Ry.* v. *Horton*, 233 U. S. 492, 503 [Ann. Cas. 1915B, 475, L. R. A. 1915C, 1, 58 L. Ed. 1062, 34 Sup. Ct. Rep. 635] ; *Jacobs* v. *Southern Ry. Co.*, 241 U. S. 229, 235 [60 L. Ed. 970, 36 Sup. Ct. Rep. 588].) ██ As we understand these cases, they hold that the common law rule governing the defense of assumption of risk applies to all actions brought under the federal Employers' Liability Act, except those brought against a common carrier for the violation of any statute enacted for the safety of employees to which the instant action does not belong.

It is somewhat singular that there is no case to be found in the reports of this state, at least none has been called to our attention and our research has failed to discover any case, which has applied the simple tool doctrine in passing upon the liability of an employer for injuries sustained by the employee. There are cases, however, to be found among the decisions of our appellate courts in which the facts might have justified the application of the rule, but which were decided without any reference to this rule of law, and in direct opposition to its terms.

In *Notthoff* v. *Los Angeles Gas etc. Co.*, 161 Cal. 93, 97 [118 Pac. 436, 438], the employee complained that a certain sump hole filled with boiling water in a basement was not covered with a platform. The employer agreed to construct a platform covering the hole. The employee was

injured and was nonsuited by the trial court. This court reversed the judgment and stated the rule in such cases to be as follows: "The general rule is that where an employee has full knowledge of the unsafe condition of the premises upon which he is working, he is deemed to assume the special risk incident to the employment under such conditions. (Citing authorities.) Upon this general rule is engrafted a well established exception that where 'an employee notifies the master of a special risk, and objects to continuing the work under the existing conditions, and is induced to continue such work by a promise to remove the danger within a reasonable time, then for such time the employee is not presumed to assume such risk'." (Citing authorities.)

In *Hawley* v. *Los Angeles Creamery Co.*, 16 Cal. App. 50 [116 Pac. 84], the defendant operated a dairy and the plaintiff was the driver of its milk wagon drawn by a team of horses. The lines used by the driver in guiding and checking his team were defective. The driver notified the manager of the creamery of such defect. The manager promised to take care of the defect. A few days thereafter while plaintiff was driving the team, the lines broke in the defective part. The team ran away and injured the driver severely. A judgment in his favor was affirmed by the District Court of Appeal and this court refused a further hearing of the case. The District Court of Appeal held, at 16 Cal. App. 53 [116 Pac. 84, 86], that, "When, however, as in this case, the master, through a vice-principal, has expressly promised to repair a defect, the servant can recover for the injury caused thereby within such period of time after the promise as it would be reasonable to allow for its performance . . . " *Diehl* v. *Swett-Davenport Lumber Co.*, 14 Cal. App. 495 [112 Pac. 561], was also a case in which the employee recovered judgment which was sustained on appeal. The defect was simply a hole in the floor of a wooden platform. The employer promised reparation. The employee was injured when his foot slipped into the hole and he was thrown against dangerous machinery and severely injured.

From the foregoing authorities we see no escape from the conclusion that the trial court was in error in directing a verdict in this case in favor of the defendant, and for that

reason the judgment based upon such verdict must be reversed.

 We think there is no merit in respondent's contention that the plaintiff has failed to perfect a valid appeal from the judgment in this action. It is true that the notice of appeal states that the appeal is from the judgment of *nonsuit*. There was only one judgment rendered in this action, and it was not a judgment of nonsuit. But it is clear that the plaintiff intended to appeal from the judgment rendered by the trial court. The words, "of nonsuit", may well be disregarded as surplusage.

The judgment is reversed.

Langdon, J., Preston, J., Waste, C. J., and Shenk, J., concurred.

Rehearing denied.