[Crim. No. 4440. In Bank. Oct. 2, 1944.]

In re GEORGE WALLACE, On Habeas Corpus.

Aubrey Grossman, Herbert Resner and Natalie J. Holly for Petitioner.

Earl Warren, Attorney General, Robert W. Kenny, Attorney General, T. G. Negrich and John Quincy Brown, Deputies Attorney General, Ralph E. Hoyt, District Attorney (Alameda) and Nathan Harry Miller, Deputy District Attorney, for Respondent.

TRAYNOR, J.—Petitioner contends that there was collusion between the prosecution and one of the jurors in the proceeding leading to his conviction for the second degree murder of George W. Alberts, and that he was therefore denied due process of law.

Petitioner and his codefendants Earl King, E. G. Ramsay and Frank Connor were on trial before a jury from November 13, 1936, to January 5, 1937. One of the jurors, Julia Vickerson, in her voir dire examination when asked by defense counsel if she knew any of the members of the district attorney's office, replied that she was slightly acquainted with Charles D. Wehr, one of the prosecuting attorneys who assisted the district attorney during the trial. Petitioner claims that this testimony was false and that the district attorney and Wehr acquiesced in it although aware of its falsity, because they wanted Julia Vickerson to take part in the trial as a prejudiced juror. Petitioner declares that at the time of the trial there was a close relationship between Wehr and Julia Vickerson, that more than a year before the trial Mrs.

Vickerson made a loan to Wehr that was never repaid, and that subsequent to the trial she made him other loans totaling $15,376.

On motions for a new trial made by petitioner and his co-defendants, the latter alleged that Mrs. Vickerson concealed her relationship with Wehr when she testified as a prospective juror. Their allegation, however, referred to an attorney and client relationship between Wehr and both Julia Vickerson and her husband and is therefore unlike petitioner's allegation. At the hearing on the motions for a new trial Wehr, Julia Vickerson, and her husband testified that there was no such relationship, and Julia Vickerson and Wehr testified also that they were only slightly acquainted. The court found that Mrs. Vickerson was not a prejudiced juror. Upon appeal taken by petitioner's codefendants, the District Court of Appeal, whose decision became final, affirmed the convictions and declared that an attorney and client relationship between a prosecuting attorney and a juror does not disqualify the juror, and that the trial court's finding that Julia Vickerson was not actually prejudiced could not be disturbed on appeal (*People* v. *King*, 30 Cal.App.2d 185, 207 [85 P.2d 928]). In 1939, some time after this decision became final, Wehr died.

Within the time allowed for the filing of claims against Wehr's estate, Julia Vickerson consulted one of the defense counsel for petitioner's codefendants and he prepared the claim that she filed against the estate. This claim listed various loans totaling $15,376 that Mrs. Vickerson claimed she made to Wehr between the termination of petitioner's trial and Wehr's death. The loan of $8,500, allegedly made before petitioner's trial, was not included in this claim against the estate or in the suit brought by Mrs. Vickerson after denial of her claim by the administrator of the estate, but is listed in a memorandum in Mrs. Vickerson's handwriting, which she used in her action against the estate. Allegedly prepared at Wehr's request and in his presence, the memorandum describes the loan as follows: "Loan of $8,500 yr. 1936. Had note signed by Chas. [Wehr] but he advised me to destroy while the ship murder case was pending and then he would make a new note for me." Petitioner's explanation of the omission of this loan in the claim filed and in the suit against

the estate is that the statute of limitations as to perjury committed at petitioner's trial and at the hearing of the motions for a new trial had not run when Mrs. Vickerson filed the claim against Wehr's estate, and that she preferred to lose the claim rather than to expose herself to punishment for the concealment of this indebtedness when she testified as a prospective juror.

This court issued a writ of habeas corpus and appointed Judge Hartley Shaw of the Superior Court of the County of Los Angeles to act as referee for the purpose of taking evidence. The referee, upon hearing oral evidence and examining the documentary evidence submitted to him by both parties, reported to this court and submitted his findings that no personal or financial relations ever existed between Wehr and Julia Vickerson. These findings and the referee's report, although not binding on this court (*In re Mooney,* 10 Cal.2d 1, 17 [73 P.2d 554]; *In re Egan,* 24 Cal.2d 323, 331 [149 P.2d 693]), have been considered together with petitioner's objections to the report and the findings of the referee in our own examination of the record.

Petitioner relies mainly on Julia Vickerson's testimony at the hearing before the referee. She testified that from some time after the trial until Wehr's death a close relationship existed between her and Wehr, but that no such relationship existed at the time of the trial. She declared that although she concealed her loan of $8,500 to Wehr, her statements as a prospective juror were substantially correct. She stated that she made the loan in 1935, more than a year before the trial, receiving in exchange Wehr's unsecured promissory note for one year with interest, and that she did not know Wehr until they met to discuss the loan. He sought a loan on ranch and grazing land in a newspaper advertisement that she answered, and they subsequently met in a bank lobby to discuss the transaction. Shortly thereafter they met at the same place, and Mrs. Vickerson gave Wehr the money in cash. She has been unable to produce the note or any bank record relating to this transaction or subsequent ones. She explained that she destroyed the note or returned it to Wehr to destroy, and that she kept her money in dollar bills in a safe deposit box. She testified that when the note fell due in 1936, some time before petitioner's trial, she had a telephone conversation with Wehr in which he asked her to wait for pay-

ment because he was involved in the preparation of the case against petitioner and his codefendants, and that after this conversation she had no contact with him until she saw him daily in the courtroom during petitioner's trial. The cross-examination was concerned with showing that at the time of the alleged loan Mrs. Vickerson was not financially able to make a loan of $8,500. She admitted going through bankruptcy in 1931 and having some "lean years" from 1931 to 1934. She claimed, however, that although she had shared living expenses with her husband and had spent money for the support and education of her two children, she saved $8,500 from her earnings between her bankruptcy and 1935.

After Mrs. Vickerson completed her testimony she was discharged as a witness. Later she reappeared in the courtroom and received permission to revise her testimony. She then stated that she would have been unable to make the loan in 1935 from her savings of the preceding years, and that more than one-half the amount came from sources other than earnings, namely $3,250 from the sale of furniture of her Vale Vista home in August, 1935, and $1,400 from the cancellation of four life insurance policies. She also revoked her statement that she had no contact with Wehr after her telephone conversation with him when the loan matured, testifying that immediately before she took the oath as juror Wehr met her at his request in her husband's office and persuaded her to serve as a juror despite her unwillingness, stating that he might lose his position and become unable to pay his debt to her if the accused were acquitted.

█ Petitioner must prove that Julia Vickerson's testimony as a prospective juror was substantially false concerning her relations with Wehr to prove a violation of the due process clause of the Fourteenth Amendment. █ The due process clause may be violated by conduct of the prosecuting authority that weighs the scales against the accused, such as offering perjured testimony with knowledge of its falsity (*Hysler* v. *Florida*, 315 U. S. 411 [62 S.Ct. 688, 86 L.Ed. 932]; *Mooney* v. *Holohan*, 294 U.S. 103 [55 S.Ct. 340, 79 L. Ed. 791, 98 A.L.R. 406]), or using a confession with the knowledge that it was obtained by force or fraud (*Brown* v. *Mississippi*, 297 U.S. 278 [56 S.Ct. 461, 80 L.Ed. 682]; *Chambers* v. *Florida*, 309 U.S. 227 [60 S.Ct. 472, 84 L.Ed. 716];

*Lisenba* v. *California,* 314 U.S. 219 [62 S.Ct. 280, 86 L.Ed. 166]). Similarly, acquiescence of the prosecuting authority in false testimony of a prospective juror as to his relationship with one of the prosecuting attorneys is a "failure to observe that fundamental fairness essential to the very concept of justice" (*Lisenba* v. *California, supra,* at p. 236) and therefore violates the due process clause. A prospective juror would hardly commit perjury to conceal his relationship with one of the prosecutors if he were not prejudiced. The acquiescence of the prosecuting attorney in the concealment of the truth by a prospective juror is tantamount to cooperation in the concealment of the prospective juror's prejudice. Impartiality in a judge or juror is indispensable to a fair trial (*Tumey* v. *Ohio,* 273 U.S. 510, 530 [47 S.Ct. 437, 71 L.Ed. 749]; *Baker* v. *Hudspeth,* 129 F.2d 779). ■ A violation of the defendant's constitutional rights during the trial leading to his conviction is ground for attack on the judgment in a habeas corpus proceeding if the petitioner has no other adequate remedy to test the constitutionality of the proceeding resulting in his conviction (*In re Bell,* 19 Cal.2d 488, 494 [122 P.2d 22]; *Portnoy* v. *Superior Court,* 20 Cal.2d 375, 378 [125 P.2d 487]; *In re Silverstein,* 52 Cal.App.2d 725 [126 P.2d 962]; *In re Connor,* 15 Cal.2d 161, 163 [99 P.2d 248]; *In re Connor,* 16 Cal.2d 701, 705 [108 P.2d 10]). Petitioner could not appeal from his conviction on the ground on which he now relies, for he obtained the information underlying his petition only after Wehr's death in 1939, when the time for appeal had expired.

■ Petitioner has not sustained the burden of proving by convincing evidence the falsity of Julia Vickerson's testimony as a prospective juror (*In re Bell, supra,* at p. 500; *Johnson* v. *Zerbst,* 304 U.S. 458, 468 [58 S.Ct. 1019, 82 L.Ed. 1461]; *Hysler* v. *Florida, supra,* at p. 422). He has failed to submit proof that the district attorney was aware of the alleged relationship between Wehr and the juror. Proof of Wehr's knowledge would have been adequate had petitioner established that there were relations between Mrs. Vickerson and Wehr concealed by Mrs. Vickerson when she testified as to her qualifications to serve as a juror. It must be proved that such relations existed at the time of the trial; any subsequent relations could not affect her impartiality as a juror. Her testimony before the referee regarding her relations with

Wehr corroborates her statements as a prospective juror, for she denied that she had any personal relation with Wehr at the time of petitioner's trial. The only part of her present testimony inconsistent with her testimony as a prospective juror is her statement that at the time of the trial Wehr owed her $8,500, but there is no trace of either the receipt or expenditure of this sum in Wehr's bank accounts, which recorded his financial transactions, and there was no apparent reason for him to conceal the loan at the time it was allegedly made. Mrs. Vickerson testified that Wehr gave her his promissory note for the loan, but she was unable to produce any documentary evidence other than memoranda in her own handwriting that she possessed $8,500 in 1935 and lent it to Wehr. It would be unusual for a woman of Mrs. Vickerson's business experience to accumulate such a sum in dollar bills in a safe deposit box. Moreover, her testimony is inconsistent on fundamental points. Her cross-examination at the hearing before the referee was largely directed at whether she possessed $8,500 in 1935, and made it clear that her earnings during the depression years from 1931 to 1935 after her bankruptcy in 1931, did not permit her to accumulate such an amount. Nevertheless, she at first insisted that she earned this amount during that period, and it was only later, when she may have become convinced that this explanation would not seem credible, that she contradicted it by the statement that more than one-half the amount came from sources other than earnings. Again, while she stated at first that after her telephone conversation with Wehr when the note fell due, she had no further contact with him until the trial, she described in detail upon her reappearance as a witness a meeting with Wehr before the trial, when he urged her to serve as a juror, linking this public service with her personal interest in the repayment of the loan. If this meeting occurred, she would hardly have forgotten it when she first testified before the referee and then remembered it after she had completed her testimony. In repudiating her former testimony Mrs. Vickerson had every reason to be careful in her new testimony; yet it contains inconsistencies so glaring that they cannot be attributed to inadvertence. Since it is impossible to rely on her statements, little weight can be attributed to her references to her own informal memoranda of the loan. Her

husband's testimony that he was present when a memorandum was prepared by Mrs. Vickerson and that he discussed it with Wehr is not adequate proof that the loan was made. There is no more reason to assume that Wehr and Mrs. Vickerson testified falsely when they denied at the hearing for a new trial that there were any relations between them, than to assume that Mrs. Vickerson and her husband testified falsely at the hearing before the referee.

It is unnecessary to determine whether the alleged close personal relations between Wehr and Mrs. Vickerson existed after petitioner's trial, for in any event, it would not follow that a business loan was made by Mrs. Vickerson at a time when, according to her testimony, there was no personal relationship between them.

The writ heretofore issued is discharged.

Gibson, C. J., Shenk, J., Curtis, J., Edmonds, J., and Schauer, J., concurred.

CARTER, J.—I concur in the conclusion reached in the majority opinion but since there is much in said opinion with which I do not agree, I prefer to express my views separately.

I do not agree with the statement in the majority opinion that "Petitioner has not sustained the burden of proving by convincing evidence the falsity of Julia Vickerson's testimony as a prospective juror" because "He has failed to submit proof that the district attorney was aware of the alleged relationship between Wehr and the juror." It is true that the opinion also states that: "Proof of Wehr's knowledge would have been adequate had petitioner established that there were relations between Mrs. Vickerson and Wehr concealed by Mrs. Vickerson when she testified as to her qualifications to serve as a juror." In my opinion, petitioner would be entitled to the relief which he is seeking in this case upon proof to the satisfaction of a majority of this court that any of the prosecuting officials knew that an intimate relationship existed between Wehr and the prospective juror and that her testimony denying such relationship was false. Such knowledge should be imputed to the district attorney as chief prosecuting officer of the county as he was responsible for the selection of the prosecuting officials and was bound by their conduct. It is obvious that petitioner would be prejudiced to the same

extent from such misconduct on the part of the prosecuting officials whether or not the information of such misconduct was communicated to the district attorney.

There are other statements in the majority opinion relative to the weight to be given Mrs. Vickerson's testimony with which I do not agree but I will not take the time to mention them specifically.

The view I take of this case is that while we are not bound by the findings of the referee and may weigh the evidence and pass upon the credibility of the witnesses without regard to the findings of the referee, I find myself unable to disagree with the findings of the referee from an examination of the cold record. He having heard the witnesses testify, and observed their demeanor while testifying, is in a much better position than a member of this court to pass upon their credibility, and in view of the apparent discrepancies in the testimony of Mrs. Vickerson, although some of her testimony is very convincing, I am not disposed to disagree with the conclusion reached by Judge Shaw, the referee, that she was not telling the whole truth. In view of this state of mind, the only conclusion which I can reach is that the writ should be denied.