[Crim. No. 3140.   First Dist., Div. Two.   Oct. 25, 1955.]

THE PEOPLE, Respondent, v. JOSEPH PAUL CATO, Appellant.

James D. Hadfield, under appointment by the District Court of Appeal, for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Chief Assistant Attorney General, and John S. McInerny, Deputy Attorney General, for Respondent.

NOURSE, P. J.—This is an appeal from an order denying an application made by defendant in propria persona to the San Francisco Superior Court, dated December 15, 1954,

with respect to his appeal from a judgment of conviction of second degree murder entered by said court on December 19, 1951. No notice of appeal of said judgment had previously been filed. In 1953 appellant had petitioned the California Supreme Court for a writ of habeas corpus, which was denied without opinion. Appellant then petitioned the United States Supreme Court for a writ of certiorari stating among other grounds: ''XI. That petitioner was deprived of his rights to give notice of appeal and the arrest of judgment of conviction by actions of his jailors.'' On October 14, 1954, said petition was denied on the following terms: ''The petition for writ of certiorari is denied without prejudice to the petitioner's rights under the facts alleged to prosecute an appeal in the California State Courts in accordance with principles announced in *People* v. *Slobodion*, 30 Cal.2d 362 [191 P.2d 1].'' Appellant's above application to the superior court stated in substance that appellant appealed from the judgment of December 19, 1951, on the basis of the above order of the United States Supreme Court and prayed for an order allowing such appeal and for an order for a transcript on appeal, designating the parts of the reporter's transcript he desired. His petition for writ of certiorari, containing his grievances against the original judgment, was appended. On February 24, 1955, the matter was heard in the superior court, appellant and a witness for the People testified and the motion was denied, the court holding that the facts, even those testified to by appellant, did not bring him under the Slobodion case. The transcript shows that when on December 19, 1951, appellant was sentenced to San Quentin a stay of execution was granted to and including January 2, 1952. Appellant's testimony was in substance to the following effect. During that period he was kept in the San Francisco County Jail No. 1. On December 19th his attorneys visited him there. They advised against appeal, but he said that he thought he would continue. He had an arrangement with them that for the amount paid by him they would defend his case in full including, if necessary, an appeal. The result of their conversation was that appellant and the attorneys would think the question of appeal over, and that one of the attorneys would be back in a day or so. When he did not come, even after appellant wrote to them asking why they did not show up, appellant himself wrote out a document intended as a notice of appeal, and gave it to a man, he knew as Mr. Jule. After

about half an hour Mr. Jule brought the document back saying: ''Captain Smith wants to know who you think you are, anyhow, around here. . . . Do you think we are your servants?'' Appellant kept the document and did not do anything further about it, except trying to contact his attorneys through his sister. He did not mail the notice of appeal. Mr. Jule said later it was useless to mail the thing; it would not be given privilege, because most of his mail was confiscated by Mr. Smith. Mr. Jule ''practically'' told him that he would not be able to get it out unless he got it out through his attorneys. Appellant insisted on it being notarized, hoping to have the notary take it to court, but he was refused that privilege. He was sending out mail at that time. Some of it was confiscated, some reached his sister or his wife. He did not try to mail the notice or to contact anybody else to file it because he was afraid that if he was too insistent, there would be retaliation by putting him in the ''black hole'' where he had been for four days prior to his trial. On January 3, 1952, he was taken to San Quentin and he took the papers he had prepared with him. He kept them in his locker where they were eventually confiscated. He remained in San Quentin for four months and was then taken to Folsom. Because of restrictions on study he took 18 months of research in Folsom before he filed his petition to the California Supreme Court.

Mr. Smith, who at that time was captain of the day watch in charge of County Jail No. 1, testified for the People that mail was censored but that no mailing was refused except when it was obscene or derogatory. He did not recall any conversation about appellant's mail or any of appellant's mail being refused. Appellant had the normal mailing privileges.

Counsel for appellant, appointed by this court to assist him on this appeal, has diligently urged that the above facts can be brought under the rule of the Slobodion case, *supra.* Both parties have concentrated on this point and have abstained from treating the formal adequacy of appellant's application or motion. We also think it advisable to decide this appeal solely on the merits as to the matter suggested by the United States Supreme Court, and have concluded that on that basis the order must be affirmed.

In the Slobodion case the defendant incarcerated in San Quentin had four days after judgment placed his notice of appeal in the prison mailbox. Three days later it had been returned to him without explanation. The next day

he went to the mailing department where the sergeant in charge could find no explanation for the return. Defendant explained the nature of the document and the importance of having it mailed at once, but, notwithstanding a promise to take care of it, the mailing was delayed some days so that it reached the clerk's office a few days too late. The Supreme Court held that nevertheless the appeal should be considered timely.

In its opinion the court upheld the general rule that in criminal cases the appellate courts are without jurisdiction to consider an appeal taken after the expiration of the 10-day period of rule 31 of the Rules on Appeal, but recognized that an exception should be made in the case of a defendant who was in custody, who had taken every step allowed by the officials in whose custody he was which he could possibly take to perfect his appeal, but who was unable to have the clerk of the superior court timely receive his notice of appeal because of the negligence of said authorities in forwarding it. Cases in which the defendant was without negligence prevented from timely noticing his appeal by other circumstances than the fault of public officials were expressly distinguished. The exception was rationalized as a constructive timely appeal. ■ From the above it appears that there are two requirements for the applicability of the exception: 1. The defendant must be free of all fault or lack of dilegence contributing to the tardiness of the notice of appeal and 2. the tardiness must have been caused by the fault, negligent or intentional, of the public officials in whose custody the defendant was.

■ In our case these requirements are evidently not fulfilled. The only step which appellant took to effectuate his appeal within the statutory period was to hand the notice to a man whose exact capacity at the jail does not appear, but who was not the person in charge. It is conceded on appeal that no jail attendant was under duty to act as appellant's messenger. Nevertheless when appellant was so told within half an hour, he did not try to effect the filing of the document in any other manner. No endeavor was made to mail it, although appellant had sent out other mail which at least in part had reached the addressees. Although he testified that he had paid for services of his attorneys with respect to an appeal, if that should become necessary, he did not instruct them by mail to file notice of appeal. Even if it should be believed that his conversations with

Mr. Jule had convinced him that the jail officials did not wish him to appeal without the assistance of his attorneys, that could not reasonably prevent him from instructing these attorneys. With respect to the alleged fear of retaliation it must be noted that appellant did not testify to any threat. The vague conversations with Mr. Jule to which he testified cannot be considered to have prevented timely filing of the appeal, even if we assume that Mr. Jule was employed at the jail in such a capacity that his acts would be those of the authorities in whose custody appellant was.

█ Appellant urges that it is not enough that the State did not prevent the timely appeal but that it had a duty to take positive action to assist appellant, who was restrained, in timely perfecting it. The failure to do so is said to bring appellant's case under the rule of the Slobodion case. This contention disregards the very exceptional nature of the rule and would extend it beyond its reasonable limits.

Moreover, as appellant knew that no notice of appeal whatever was forwarded during the statutory period for appeal, his complete lack of diligence after he left the jail cannot be overlooked. When on January 3, 1952, he came to San Quentin he was still in possession of the papers he had prepared but he did not mail them and instead he took nearly two years to prepare a petition for writ of habeas corpus. The theory of the Slobodion case, based on a constructive timely filing of notice of appeal cannot justify an unlimited postponement of the actual institution of the appeal. In all cases in which the applicability of the rule was accepted the statutory period had been exceeded by a few days only.

Order affirmed.

Dooling, J., and Kaufman, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 23, 1955. Carter, J., and Schauer, J., were of the opinion that the petition should be granted.