[Crim. No. 5986. In Bank. May 31, 1957.]

In re ABEL GONSALVES, on Habeas Corpus.

Abel Gonsalves, in pro. per., and Jerome A. Duffy, under appointment by the Supreme Court, for Petitioner.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and Arlo E. Smith, Deputy Attorney General, for Respondent.

SCHAUER, J.—Petitioner in this habeas corpus proceeding seeks a determination that he instituted an appeal by the timely constructive filing of a notice of appeal from the judgment under which he is held. This notice was not received by the clerk of the superior court which rendered the judgment. We have concluded that habeas corpus is an appropriate proceeding to enable petitioner to obtain a declaration to that effect so that he will be able to have a record prepared (see *In re Byrnes* (1945), 26 Cal.2d 824 [161 P.2d 376]) and that petitioner has shown that he has an appeal pending under the doctrine of constructive filing (see *People* v. *Slobodion* (1947), 30 Cal.2d 362 [181 P.2d 868]).

Petitioner is imprisoned under a judgment of conviction of illegal sale of narcotics (Health & Saf. Code, § 11500). The Los Angeles Superior Court rendered such judgment on December 19, 1955. So far as the superior court file of the proceedings against petitioner discloses, the judgment became final without timely filing of a notice of appeal. After such judgment had apparently become final, petitioner in propria persona filed his petition for habeas corpus. He alleges in substance that because he was without funds he could not employ counsel to represent him on appeal; that on December 20, 1955, the day after rendition of judgment, he attempted to appeal by placing a notice of appeal, stamped and properly addressed, in the proper place for deposit of outgoing mail

in the Los Angeles county jail, where petitioner was then confined; and that jail officials "concealed" the notice and "refused" to mail it. This asserted notice of appeal did not reach the file of the clerk of the court by which the judgment was rendered.[1]

After issuance of an order to show cause directed to the warden of the state prison having custody, and the filing of his return, we appointed counsel for petitioner and submitted to a referee the questions quoted in the margin.[2] Such referee has made the following "findings of fact":

"1. Petitioner did not prepare a valid written notice of appeal from the judgment under which he is now held in custody.

"2. (a) Petitioner did write a letter to Judge Walker[3] and to the Clerk of the Superior Court and placed it in an envelope addressed to Clerk of the Superior Court, 306 North Broadway, Los Angeles, California, [4] with a three-cent stamp. In substance the letter stated: 'I am dissatisfied with the judgment', 'Please accept my notice of appeal', 'Please inform me and instruct me if there is anything else I should do. Your immediate reply will be appreciated', 'Respectfully' and signed it Abel Gonsalves. He did not make any reference to the case of *People* vs. *Gonsalves,* or make any other reference of that nature.

"(b) Petitioner placed the stamped envelope with the letter enclosed in the clip at the front of the cell for outgoing mail (c) on December 20, 1955, at about 11:00 A.M.,

---

[1] Other allegations of petitioner which attempt to state a case for habeas corpus are insufficient to bring him within established rules, or any suggested reasonable extension of such rules, and need not be discussed.

[2] "1. Did petitioner prepare a written notice of appeal from the judgment under which he is now held in custody?

"2. If such a notice was prepared: (a) What, in substance, did it state? (b) What steps, if any, did petitioner take toward causing such notice to be filed with the clerk of the superior court? (c) When were such steps, if any, taken? (d) Did petitioner in taking such steps comply with jail rules?

"3. If it is contended that jail rules were unreasonable and operated to preclude timely filing, what were the rules and how did they affect the attempted filing?

"4. Did a jail official refuse or neglect to mail or file the notice, if any such notice was delivered to him?"

[3] The Honorable Herbert V. Walker, who tried and sentenced petitioner, was the only "Judge Walker" who was a judge of the Los Angeles county superior court at the time of petitioner's attempted appeal.

[4] 306 North Broadway was the address of the Hall of Justice; the office of the criminal division of the county clerk was in this building.

and watched a man in Sheriff's uniform pick it up. (d) The Petitioner in taking such steps complied with jail rules regarding outgoing mail.

"3. The jail rules were that outgoing mail be placed in clips at the gate of the tanks, that prisoner's name and address be placed on the upper left corner, and also on the flap at the back of the envelope, properly addressed and stamped. The envelope remain___ open for censorship. The rules were not unreasonable and they did not affect the attempted filing.

"4. No jail official refused or neglected to mail or file the purported notice.

"5. The referee finds that no purported notice of appeal was filed or placed in the file of *People* vs. *Abel Gonsalves,* No. 175607, in the office of the Los Angeles County Clerk within the ten day period, expiring on December 29, 1955; that the letter of December 20, 1955, was an insufficient notice of appeal in that it did not identify the case or any portion thereof sought to be appealed from; that Petitioner did not talk to any State, County or jail official from time of judgment until the expiration of the ten day notice of appeal period; that there was no constructive filing or cause for extension of time and there was no evidence of fraud, inadvertence or neglect on the part of the adverse party; (*People* vs. *Delaney* [(1955), 132 Cal.App.2d 838 (283 P.2d 287)], *People* vs. *Riser* [(1956), 47 Cal.2d 566 (305 P.2d 1)]) that Petitioner bore the risk of filing by mail (*People* vs. *Martiz* [(1955), 130 Cal.App.2d 602 (279 P.2d 568)]) and that Petitioner was not lulled into a false feeling of security by anyone."

The attorney general argues that habeas corpus will not lie where the petitioner's purpose is to determine that an appeal is pending and to effect preparation of a record so that he can perfect such appeal. This contention is refuted by *In re Byrnes* (1945), *supra,* 26 Cal.2d 824, where we determined, on habeas corpus, that "By the timely notices of appeal from the judgments of conviction under which Byrnes is now in custody, the District Court of Appeal acquired jurisdiction over the two actions, and . . . lack of a record on appeal does not affect its jurisdiction," and where we directed the appropriate court "to hear any motion or motions made within 90 days after the date of the filing of this opinion for the purpose of securing relief from default in the presentation of the record upon appeal in either or both of the actions referred to" (p. 828 of 26 Cal.2d [2, 3]).

The attorney general suggests that petitioner should have sought relief in the trial court, as did the prisoner in *People* v. *Cato* (1955), 136 Cal.App.2d 503 [289 P.2d 119], or mandate as did the prisoner in *Brown* v. *Superior Court* (1955), 136 Cal.App.2d 28 [288 P.2d 144]. In both the Cato case (pp. 506-507 of 136 Cal.App.2d) and the Brown case (p. 31 of 136 Cal.App.2d) it was determined, without any discussion of the appropriateness of the form of remedy sought, that the prisoner was not entitled to relief enabling him to effect a belated appeal because he had not shown a "constructive filing." In view of our decision in Byrnes that habeas corpus is the appropriate remedy, we do not regard the Cato and Brown cases as persuasive in relation to the question of what form of relief one in petitioner's situation should seek. In this connection it appears undesirable to relegate a prisoner who would assign violation of fundamental rights to the task and the hazard of selecting among the technicalities of an assortment of forms of writs, motions, and petitions. In this state, where habeas corpus is available not only to secure relief from illegal imprisonment but also to secure relief from illegal conditions of imprisonment (see *In re Chessman* (1955), 44 Cal.2d 1, 9 [279 P.2d 24], and cases there cited), such technical niceties are inappropriate.

The foregoing "findings of fact," insofar as they are actually findings, carefully determine the submitted questions of fact. The specific findings as to petitioner's attempt to mail the letter of December 20, 1955, are supported by ample, credible evidence. ▮ The findings are not binding on this court, but we have considered them, together with the transcript of the evidence before the referee, in our independent examination of the record. (See *In re Wallace* (1944), 24 Cal.2d 933, 937 [152 P.2d 1]; *In re Atchley* (1957), *ante,* pp. 408, 411 [310 P.2d 15].)

▮ Insofar as the "findings" purport to determine that "Petitioner did not prepare a *valid* written notice of appeal" and that his writing was "an *insufficient* notice of appeal" (italics added), they are conclusions of law which are out of harmony with the specifically found facts and with the Rules on Appeal and the decisions which require liberal construction of documents which are manifestly intended as notices of appeal. (Rule 31 ["The notice shall be sufficient if it states in substance that the party appeals from a specified judgment or order or a particular part thereof, and shall be liberally construed in favor of its sufficiency"]; *People* v. *Robinson* (1954),

43 Cal.2d 143, 145-146 [3, 4] [271 P.2d 872]; *People* v. *Saad* (1951), 105 Cal.App.2d Supp. 851, 852-853 [2] [234 P.2d 785], and cases there cited; *Kellett* v. *Marvel* (1936), 6 Cal. 2d 464, 471 [2] [58 P.2d 649] ["notices of appeal are liberally construed to preserve the right of review unless it appears that the respondent has been misled by the misdescription"]; see West's Annotated Cal. Codes, Civil and Criminal Rules (1955), p. 53, note 9, pp. 54-56, notes 11-13, pp. 58-60, notes 17-20, pp. 352-353, note 2, p. 356, notes 11-12, Witkin, *New Rules on Appeal* (1944), 17 So.Cal.L.Rev. 79, 82.)

Respondent People would not have been misled by the attempted notice of appeal which petitioner sought to forward to the clerk on December 20, 1955, and which did not reach the file of the action. According to the testimony of the chief clerk of the criminal division of the superior court, such notice, had it been received, "in all probability" would have resulted in the preparation of a record on appeal;[5] such record, we may assume, would have been disposed of in usual course in accord with the Rules on Appeal and without prejudice to anyone on account of the inartificiality of the notice.

Petitioner's letter of December 20, 1955, did not state the name or number of the case in which he sought to appeal, nor the date of rendition of the judgment from which he undertook to appeal. However, it would be unnaturally harsh to construe the letter as anything other than an expression of a desire that the clerk accept the letter as "my notice of appeal" from a judgment which had been rendered against the author of the letter in a criminal case which had been decided at some time not distant from the date of the letter. It does not appear that Judge Walker rendered a number of judgments against a number of persons named Abel Gonsalves during the period to which the letter of December 20, 1955, could have applied. It has often been held that inaccuracies in designation of the judgment or order appealed from and of the date of rendition or entry do not vitiate a notice of appeal even where the notice has been prepared by

---

[5]The clerk's testimony shows that he properly took a liberal view as to what constituted notices of appeal, that it was his practice to consult with the judge who had tried the case if he thought that there was any doubt whether a communication was intended to be a notice of appeal, that "I have never had one come in yet, no matter how crudely worded it was, where there is any indication in words or effect, that we have neglected to recognize a notice of appeal, . . . provided it is received within the statutory time." The clerk frankly recognized, however, that "there is the margin of human error."

counsel (who, of course, are better able than imprisoned laymen to obtain and to formulate specifications identifying the precise judgment or order from which they would appeal). (E.g., *Adams* v. *Talbott* (1942), 20 Cal.2d 415, 417 [1] [126 P.2d 347]; *Kellett* v. *Marvel* (1936), *supra*, 6 Cal.2d 464, 471 [1, 2]; *Hoogbruin* v. *Atchison etc. Ry. Co.* (1931), 213 Cal. 582, 596 [7] [2 P.2d 992]; *Oberkotter* v. *Woolman* (1921), 187 Cal. 500, 502 [1] [202 P. 669].)

In *People* v. *Delaney* (1955), *supra*, 132 Cal.App.2d 838, 839, upon which the referee relied for his rather strict construction of the letter by which petitioner attempted to notice an appeal, a convicted defendant filed in the court which rendered the judgment of conviction a document which named such court, the department and the judge, designated the case by title and number, and stated, "Petitioner hereby makes known his intentions to file an appeal for a new trial, rehearing or modification upon the grounds that his constitutional rights have been abused." The District Court of Appeal held that the document was not a notice of appeal because it "does not state that defendant appeals nor does it specify any judgment or particular part thereof from which he appeals. All that the document does is state that defendant intends to file an appeal for a *new trial, rehearing or modification.*" (Italics of District Court of Appeal.) The Delaney case, however, is clearly distinguishable in that, as shown by the language emphasized by the appellate court, the defendant there by the wording of his notice indicated an intention to apply for relief in the trial court rather than to "appeal" to an appellate court.

The United States Supreme Court has expressed the view that, where state law provides for an opportunity to appeal but prison officials by suppression of a prisoner's appeal papers deprive the prisoner of the opportunity, there is a denial of equal protection. (*Dowd* v. *United States* ex rel. *Cook* (1951), 340 U.S. 206, 208 [71 S.Ct. 262, 95 L.Ed. 215, 19 A.L.R.2d 784, 787]; *Cochran* v. *Kansas* (1942), 316 U.S. 255, 257 [62 S.Ct. 1068, 86 L.Ed. 1453]; see *Brown* v. *Allen* (1953), 344 U.S. 443, 485-486 [73 S.Ct. 397, 437, 97 L.Ed. 469]; *Griffin* v. *Illinois* (1956), 351 U.S. 12, 18 [76 S.Ct. 585, 100 L.Ed. 891].) Where there has been such denial of equal protection and state remedies have been exhausted, the United States Supreme Court on habeas corpus will require the state, within a reasonable time, to afford the prisoner "the full appellate review he would have received but for the suppression of his papers,

failing which he shall be discharged." (*Dowd* v. *United States ex rel. Cook* (1951), *supra*, p. 210 of 340 U.S.)

 Although the state has no duty to see that every convicted prisoner perfects an appeal (*People* v. *Riser* (1956), 47 Cal.2d 594, 596 [2] [305 P.2d 18]), the courts of this state are alert to protect the right of an imprisoned defendant, acting in propria persona, to appeal from a judgment of conviction of crime where he diligently attempts to timely initiate and prosecute such an appeal. Illustrating this alertness, and relied upon by petitioner here, are *People* v. *Slobodion* (1947), *supra*, 30 Cal.2d 362, 365-368, and *In re Byrnes* (1945), *supra*, 26 Cal.2d 824, 827-828.

In Slobodion, on motion of the People to dismiss an appeal, we determined (p. 365 [1] of 30 Cal.2d) that "Both reason and justice compel a negative answer" to the question, "Should appellant—who was incarcerated by the state, who desired to appeal, who took every step he could possibly take to perfect his appeal, who delivered his notice of appeal to the prison authorities well within the statutory period with the request that they mail it but they carelessly and negligently failed to forward the notice so that it would be received by the 'clerk of the superior court' within the time limitation specified by law—be deprived of his right of appeal?" Accordingly, we held (pp. 367-368 of 30 Cal.2d) that "appellant's delivery of his notice of appeal to the state prison employees for forwarding six days prior to the expiration date for the taking of his appeal constituted a constructive filing within the prescribed time limit and satisfied the jurisdictional requirement as contemplated by law."

In Slobodion's case the action or inaction of state prison officials resulted in the prisoner's notice of appeal reaching the clerk after expiration of the 10 days within which a notice of appeal should have been filed. In the present case, according to the specific findings of the referee, petitioner did all that he could in compliance with jail rules to institute an appeal. He saw his properly stamped and addressed notice of appeal taken from the proper place of deposit by a person in sheriff's uniform. Then, so far as the evidence discloses, the notice simply vanished; it did not reach the clerk at all. Petitioner, by showing that the properly stamped and addressed notice was last seen in the custody of one who wore the uniform of a jail official, has done all that he could and should be expected to do by way of showing that inadvertence

of jail officials was the cause of the notice not reaching the clerk. Neither petitioner nor the People produced evidence that petitioner's notice of appeal was handled—either carefully or carelessly—by any particular jail official; the evidence was only that such a notice, if it had been handled in accord with usual jail procedure, would have been mailed to (and, hence, presumptively would have reached) the clerk. In the circumstances, petitioner with plausibility asserts that the "constructive filing" was completed when he had acted with all possible diligence, and that specific proof of lack of diligence by identifiable representatives of the People is not an element essential to proof of such "constructive filing."

As stated, the referee drew the conclusion of law, adverse to petitioner, that "Petitioner bore the risk of filing by mail," and cited *People* v. *Martiz* (1955), *supra,* 130 Cal.App.2d 602, in support of this conclusion. Insofar as the Martiz opinion contains statements or implications contrary to our views herein expressed, it is disapproved. ■ A prisoner, when he deposits a properly stamped and addressed notice of appeal in the proper place for outgoing prison mail, does not assume the same risk of nondelivery as a person not imprisoned who deposits such a notice in the United States mail. One who has access to the United States post office for deposit of his notice of appeal is properly charged with the risk of nondelivery for the practical reason that he also has access directly to the clerk's office and therefore he could assure himself, by depositing his notice directly with the clerk, that it was in fact filed. But a prisoner is not properly chargeable with the risk of nondelivery, either through failure of the prison mail system or failure of the federal mail system, because the prisoner is helpless to do anything other than to deposit his notice in accord with prison rules.

■ Despite the fact that no record on appeal was prepared, the appeal is still pending in the appropriate appellate court (the District Court of Appeal, Second Appellate District), for, as stated, lack of a record does not affect the jurisdiction of the appellate court (*In re Byrnes* (1945), *supra,* 26 Cal.2d 824, 828 [2]). Since the court in which the appeal is pending is the court which can relieve from default (Rule 53 (b)), the District Court of Appeal, Second Appellate District, is directed to hear any motion made by or on behalf of petitioner within 90 days after the date of filing of this opinion for the purpose of permitting relief from default in the preparation of a record.

The petition for habeas corpus is denied and the order to show cause, having served its function, is discharged.

Gibson, C. J., Shenk, J., Carter, J., Traynor, J., and Spence, J., concurred.

McCOMB, J.—I concur only in the order denying the petition for a writ of habeas corpus and discharging the order to show cause.

Respondent's petition for a rehearing was denied June 26, 1957.