[Crim. No. 8149.   Second Dist., Div. Three.   Mar. 6, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. WILLIAM JACK GLANCY, Defendant and Appellant.

William Jack Glancy, in pro. per., and Virgil V. Becker, under appointment by the District Court of Appeal, for Defendant and Appellant..

Stanley Mosk, Attorney General, and Jack E. Goertzen, Deputy Attorney General, for Plaintiff and Respondent.

FILES, J.—This appeal presents the not unfamiliar, but always delicate, problem of the defendant who discharges his counsel early in the proceedings and then, in the face of overwhelming evidence of guilt, contends that he has been denied due process of law.

The evidence shows that defendant conceived a plan: to pass forged Western Union money orders, and enlisted two confederates to carry out the scheme. Defendant arranged to have a genuine $5.00 money order sent from San Pedro to his home in Long Beach. Defendant then requested an offset printer to duplicate the form in blank. Defendant purchased check paper and arranged with a lithographer to prepare the plate. The lithographer notified the police, who asked that both he and the printer carry out defendant's requests. However, a police officer was watching when one of defendant's associates picked up the newly-printed money order blanks. The officer then followed and observed the delivery of the package to defendant. Later a police officer saw defendant drive his two associates to a drugstore, where one of them passed one of the counterfeits which had been filled out for $50. A search of defendant's room, conducted under a search warrant, produced the typewriter which was used to fill out the money order. Defendant and his two associates were subsequently arrested in Las Vegas, where defendant was found carrying a number of the spurious money orders on his person. The paper dealer positively identified defendant as the man who purchased the check paper. Defendant's two partners in crime (who were charged separately) testified to the full details of the enterprise.

Defendant was charged by an information containing three counts: forgery (Pen. Code, § 470), conspiracy to commit forgery (Pen. Code, § 182), and possession of forged bills (Pen. Code, § 475). The public defender was appointed to represent him. When defendant appeared before Judge Sparling for plea on August 17, 1961, counsel informed the court that he had discussed the case with defendant, that defendant desired to make certain motions which counsel felt he could not make as an attorney, and that defendant wished to substitute himself in propria persona for that purpose. Defendant confirmed this, and added that he expected to employ other counsel for the trial. There followed a colloquy in which the court attempted to persuade defendant not to discharge the public defender until after he had obtained other counsel. The court warned that if the public defender was discharged the court would not reappoint him or any other counsel, that defendant would have to represent himself unless he employed counsel privately, and that the case would doubtless go to trial on the date set whether he had counsel or not. Defendant objected that by the time he obtained private

counsel it would be too late to make a motion to dismiss under Penal Code, section 995. The court replied: "The Court will make an exception in this matter and will agree that in the event that you do employ private counsel at the time of trial, the Court will set aside the plea temporarily and listen to a 995 motion if counsel believes it's well taken." Defendant protested, "You've got my hands tied. I can't do nothing at all." He repeated his demand to be allowed to proceed without counsel. Thereupon the court relieved the public defender.

Defendant then presented to the court a written motion to dismiss under Penal Code, section 995, and a petition for a writ of habeas corpus. There was argument, after which the court denied both the motion and the petition. Defendant pleaded not guilty to all three counts and the court set the trial for September 18. Defendant stated that this date was satisfactory. The court again warned the defendant that he must be ready for trial on that date, with or without counsel, and that if the date was not satisfactory to defendant's new counsel, the latter should give notice within the next week or 10 days. Defendant produced a list of witnesses he desired to have subpoenaed for the trial. The court instructed him to hand the list to the district attorney, who would arrange to subpoena the witnesses.

On September 18 defendant appeared before Judge Vasey without counsel and asked the court to appoint someone other than the public defender. The court suggested that he might reappoint the public defender and defendant objected strenuously. When the court denied defendant's request, defendant then asked for the public defender. The deputy public defender, who was present, pointed out that he was unprepared. The court then declined to make the appointment, and ordered the case to trial as soon as a department was open. The case trailed until the following morning, September 19, when it went to trial before Judge Sutherland. Over a period of three days the prosecution put on its entire case, consisting of 15 witnesses and 14 exhibits. Defendant put on two witnesses. On the morning of September 22 the court announced that the defendant was ill and unable to be present. The trial was continued to October 2, 1961.

The record shows that on the afternoon of October 2 court convened in the jail ward of the county hospital. The judge, the clerk, the reporter, Deputy District Attorney Kirschke, and defendant were present. Count II of the information,

containing the charge of forgery, was read and the defendant stated that he understood the charge and pleaded guilty. Upon questioning by the prosecutor defendant stated that this plea was not influenced by any promise of reward or any threat. The prosecutor asked, ''You are pleading guilty because you feel that you are in fact guilty?'' Defendant replied, ''Yes.'' After the district attorney consented to the acceptance of the plea and indicated that he would move to dismiss the other counts after sentence, the following occurred: ''The Defendant: Judge, sentence me now so I can get operated on; or let me go today to Chino. The Court: I understand you don't want to apply for probation; is that right? The Defendant: No. The Court: You want to be sentenced right now? I will sentence you to the term prescribed by law. That is the sentence. Mr. Kirschke: To the State Prison? The Court: Yes. For the term prescribed by law. Mr. Kirschke: And will remand the defendant to the Sheriff? The Court: You will be forthwith remanded to the Sheriff of Los Angeles County for delivery to the proper authorities to start serving your time. Mr. Kirschke: To the California Institution for Men at Chino? The Court: To Chino. The Defendant: Your Honor, could it be arranged so they would take me right away? The Court: I will tell them to take you as soon as it is possible.''

Thereupon the other counts in the information were dismissed and defendant appealed from the judgment. Upon defendant's application this court appointed counsel to represent him on appeal.

Defendant contends that the conviction should be set aside because he was denied counsel in the trial court and because he was not properly arraigned for sentence.

Since the judgment is based upon the guilty plea made on October 2, what occurred earlier is of significance only as background. There is nothing in the record to indicate that the plea of guilty was not made voluntarily and with full understanding of its consequences. The record does not show the nature of defendant's illness except that the court stated later, in discharging the jury, that defendant had suffered some sort of slight heart attack. During the three days of trial the court had observed that defendant had some knowledge of court procedure, was able to express himself adequately, and had no reluctance to speak up and assert himself at all times. During the trial defendant had cross-examined the People's witnesses extensively, and had been

meticulous in offering the preliminary transcript in impeachment whenever the witness seemed to depart from his former testimony.

When a defendant discharges his attorney without cause, he is ordinarily deemed to have waived his right to counsel and he is not entitled to demand, at a later stage of the proceeding, that the court appoint a substitute. (*People* v. *Ortiz*, 195 Cal.App.2d 112 [15 Cal.Rptr. 398]. Cf. *In re Connor*, 16 Cal.2d 701, 709 [108 P.2d 10].) Furthermore, the defendant has a right to represent himself if he so elects. (See *People* v. *Mattson*, 51 Cal.2d 777, 788 [336 P.2d 937].) The defendant was evidently well aware of this. When Judge Sparling tried to delay acting on defendant's request that the public defender be discharged, defendant complained, "You've got my hands tied." In the face of this protest, the judge saw no ground on which he could continue to tie defendant's hands and reluctantly granted what defendant demanded as a matter of right.

When the court went to the hospital to take defendant's plea of guilty the judge had no reason to believe that the defendant then desired counsel. There is nothing in the record to suggest that counsel could have done anything to benefit the defendant who, at this point, appeared to want only to get the case over with and start his term of imprisonment.

*In re Levi*, 39 Cal.2d 41 [244 P.2d 403], and *In re Turrieta*, 54 Cal.2d 816 [8 Cal.Rptr. 737, 356 P.2d 681], are distinguishable on their facts. In both of those cases the defendant had been convicted and placed on probation; then, after a year or more, probation had been revoked and defendant had been summarily sentenced without the benefit of counsel. In both of those cases the opinion of the Supreme Court points out that the defendants were of low intelligence and apparently unaware of their right to counsel. Their failure to demand counsel upon arraignment for judgment therefore could not be considered a waiver. On arraignment for sentence after revocation of probation a number of legal questions may arise, as to which the aid of counsel may be indispensable. Sentences pronounced under those conditions were held to be invalid. However, in *Turrieta* the court pointed out: "The conclusion at which we have arrived herein is not to be construed as a holding that in all cases where a defendant is not advised of his right to counsel at the time judgment is pronounced his constitutional right has been infringed." (54 Cal. 2d at p. 820.)

Although the trial court failed to follow the form prescribed by Penal Code, section 1200, in that it failed to ask the defendant whether he had any legal cause to show why judgment should not be pronounced, the defendant himself answered the question when he said, "Judge, sentence me now." When the judge said, "I understand you don't want to apply for probation; is that right," the defendant answered, "No." This question and answer might appear ambiguous if read separately, but the whole record leaves no doubt that defendant requested an immediate prison sentence.

The record shows that the day after pronouncing judgment the judge returned to his courtroom and explained to the jury what had happened. Among other things, he told the jury that defendant had previously served terms for at least six different offenses ranging from forgery to manslaughter. We do not rely upon this statement as legal justification for the procedure which was followed but refer to it as suggesting a reasonable hypothesis for what defendant is shown to have done. Knowing that his guilt had been clearly proved and that his prior record precluded any hope of probation, and knowing further that his term of imprisonment would not start to run until he was delivered to the state institution at Chino, he realized that the best he could do was to plead guilty and request immediate delivery to the prison.

The California Constitution, article VI, section 4½, provides that no judgment shall be set aside for any error as to any matter of procedure unless, after an examination of the entire cause, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice. The record here discloses no miscarriage. The record shows that defendant understood his rights and that he received exactly what he requested.

The points which it has been necessary to discuss on this appeal could easily have been obviated by a few brief additions to the record at the time of the proceedings in the hospital. Had the court then taken a few moments to interrogate defendant as to his understanding and his purpose and the facts which brought about his change of position, the record would then have shown clearly and explicitly what is now implicit. At such a time the trial judge should realize that he may be engaged in a battle of wits with a sophisticated defendant who understands that his only hope is for a procedural error which may later take on the appearance of a denial of due process. It is a common experience that the de-

fendant who invites the trial judge to hurry will not hesitate to ask the appellate court to take more time to discover error.

The judgment is affirmed.

Shinn, P. J., and Ford, J., concurred.

A petition for a rehearing was denied April 5, 1963, and appellant's petition for a hearing by the Supreme Court was denied May 1, 1963.